**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SALVATORE J. CONTRISTANO, individually and
on behalf of all others similarly situated,

              Plaintiff,

vs.

EMPRESS AMBULANCE SERVICE, LLC,

              Defendant.

---

Case No.

**NOTICE OF REMOVAL**

       Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant, Empress Ambulance Service, LLC, files this Notice of Removal of Plaintiff's civil action from the Supreme Court of the State of New York, County of Westchester, to this Court based on diversity of citizenship under 28 U.S.C. § 1332.  In support of its Notice, Defendant states as follows:

## PLEADINGS AND BACKGROUND

       1.      On or about September 28, 2022, Plaintiff Salvatore J. Contristano ("Plaintiff") filed a purported class action complaint in the Supreme Court of the State of New York, County of Westchester, Case No. 65746/2022 (the "State Court Action"). *See* State Court Action Complaint, attached hereto as **Exhibit A** ("Complaint").

       2.      Service of the Complaint was made upon Defendant Empress Ambulance Service, LLC ("Empress" or "Defendant") on October 10, 2022. A true and correct copy of the Summons and Proof of Service are attached as **Exhibit B**.

       3.      The Complaint alleges that Empress failed to properly safeguard its patients' sensitive personal information and seeks damages and injunctive relief.

       4.      A copy of the docket in the State Court Action is attached as **Exhibit C**.

5.      In accordance with 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the state court action are attached to this Notice of Removal as Exhibits A-C.

6.      Nothing in this Notice of Removal shall constitute a waiver of Defendant's right to assert any defense, including a motion to dismiss, as the case progresses.

## PROCEDURAL REQUIREMENTS

7.      Removal of this action is timely because Empress was served with Plaintiff's Complaint on October 10, 2022. *See* Exhibit B. In accordance with 28 U.S.C. § 1446(b), Empress seeks to remove the Complaint within thirty (30) days of first being served. *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (holding that the time to remove an action runs from receipt of service of process).

8.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

9.      Pursuant to 28 U.S.C. § 1446(b), Empress will promptly provide written notice of removal of the action to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York for the County of Westchester.

## SUBJECT MATTER JURISDICTION

10.      This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

11.      Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in

controversy, in the aggregate, exceeds the sum or value of $5 million. Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

12.    As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Empress may remove the State Court Action to federal court under CAFA because: (i) this action is pled as a class action; (ii) the putative class includes more than one hundred (100) members; (iii) members of the putative class are citizens of a state different from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Gale v. Chi. Title Ins. Co.*, 929 F.3d 74, 77 (2d Cir. 2019).

## This Action is Pled as a Class Action

13.    CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332 (d)(1)(B).

14.    Plaintiff brings this action as a "class action" and seeks certification under New York law pursuant to the New York Civil Practice Law and Rules (NY CPLR) § 901, *et seq. See* Exhibit A at ¶¶ 37-46. Because New York's class action rules are "patterned on Federal Rule of Civil Procedure 23," *Alix v. Wal-Mart Stores, Inc.*, 838 N.Y.S. 2d 885, 852 n.6 (Sup. Ct. 2007); *Ramirez v. Oscar De La Renta, LLC*, No. 16-CV-7855 (RA), 2017 WL 2062960, at *1, *9 (S.D.N.Y. May 12, 2017), the first CAFA requirement is met, *see* Exhibit A at ¶ 37 ("This action is brought and may be properly maintained as a class action . . .").

## The Putative Class Includes at Least One Hundred (100) Members

15.    Plaintiff brings this "class action against Empress for its failure to secure and safeguard his and approximately 318,558 other individuals' personally identifying information

('PII') and personal health information ('PHI'), including names, dates of service, insurance information, and in some instances, Social Security numbers." Exhibit A at ¶ 1. Plaintiff alleges that, "[b]etween May 26, 2022 and July 13, 2022, unauthorized individuals gained access to Empress' network systems and accessed and acquired files from the system that contained PII/PHI of Plaintiff and Class members," (the "Security Incident"). *Id*. at ¶ 3. Plaintiff further alleges that the Security Incident occurred as a result of Empress' failure to "implement and maintain reasonable security procedures and practices to protect its patients' and former patients' PII/PHI from unauthorized access and disclosure." *Id*. at ¶ 4.

16.    Based on these allegations, Plaintiff asserts seven causes of action against Empress: (1) negligence, (2) negligence *per se*, (3) breach of fiduciary duty, (4) breach of contract, (5) breach of implied contract, (6) breach of unjust enrichment, and (7) violations of New York General Business Law ("NYGBL") § 349. *See* Exhibit A.

17.    Furthermore, Plaintiff purports to bring these causes of action on behalf of himself and a nationwide class (the "Class"). Exhibit A at ¶ 38. Plaintiff defines the Class as: "[a]ll persons whose PII/PHI was exposed to unauthorized persons in the [Security Incident], including all persons who were sent a notice of the [Security Incident]." *Id*.

18.    While Plaintiff does not allege the exact number of the Class, Plaintiff alleges that "Empress reported to the United States Department of Health and Human Services Office of Civil Rights that approximately 318,558 persons' information was exposed in the [Security Incident]." *Id*. at ¶ 41.

19.    Empress mailed notification to approximately 318,558 people within the United States that their information may have been impacted in the Security Incident.

20.    Therefore, the number of putative class members exceeds the statutorily required

minimum of 100.

## Minimal Diversity of Citizenship Exists

21.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also* 28 U.S.C. § 1332(d)(1)(D) (Under CAFA, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action"); *Fleisher v. Phoenix Life Ins. Co.*, 997 F. Supp. 2d 230, 238 (S.D.N.Y. 2014) ("[M]inimal diversity [is] diversity between ***any plaintiff class member*** and any defendant." (emphasis added)).

22.     Plaintiff's and the Putative Class's Citizenship. "An individual's citizenship . . . is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Emiabata v. Farmers Ins. Co.*, 848 F. App'x 27, 28 (2d Cir. 2021) (citing 28 U.S.C. § 1332(a)(1)). And a person's domicile, in turn, represents "the place where [the] person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). Here, Plaintiff alleges in the Complaint that he "is New York resident." Exhibit A at ¶ 7. Accordingly, absent other evidence to the contrary, Plaintiff is a citizen of New York.

23.     Plaintiff also seeks to represent a class that (1) includes "[a]ll persons whose PII/PHI was exposed to unauthorized persons in the [Security Incident], including all persons who were sent a notice of the [Security Incident]," *id.* at ¶ 38, and (2) that is not geographically limited. To date, Empress has sent notification of the Security Incident to addresses in all 50 states and the District of Columbia. And while residency does not equate to citizenship, in this case, where only one putative class member must reside and intend to remain in a state diverse from Empress, and

where Empress sent notifications to addresses in all 50 states, it is more likely than not that at least one of the approximately 318,558 putative class members is diverse from Empress.

24.    <u>Defendant's Citizenship.</u> Under 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Though the "Second Circuit has not provided guidance as to a limited liability company's citizenship for purposes of CAFA jurisdiction," this Court and sister courts in New York have concluded that a limited liability company is an unincorporated association and citizenship is determined pursuant to 28 U.S.C. § 1332(d)(10). *Kim v. Trulia, LLC*, No. 19-cv-06733, 2021 WL 8743946, *3 (E.D.N.Y. Mar. 31, 2021) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("The term 'unincorporated association' is not defined in CAFA, and this Court has not addressed the question of whether it encompasses limited liability companies."); *Claridge v. N. Am. Power & Gas Co., LLC*, No. 15–cv–1261 (PKC), 2015 WL 5155934, at *1-2 (S.D.N.Y. Sept. 2, 2015) ("This Court concludes that as an LLC, [defendant] is an unincorporated association, and its citizenship in a CAFA action is determined pursuant to section 1332(d)(10)."); *see also Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 351 (S.D.N.Y. 2019) (noting that defendants were citizens of New York because they are organized under the laws of New York and have their principal places of business in New York); *Ventimiglia v. Tishman Speyer Archstone–Smith Westbury, L.P.*, 588 F. Supp. 2d 329, 336 (E.D.N.Y. 2008) (applying section 1332(d)(10) to a limited partnership). Here, Plaintiff alleges that Empress is a "limited liability company formed in Delaware" and Empress's principal place of business is in New York. Exhibit A at ¶ 8.

25.    Thus, minimal diversity of citizenship exists pursuant to CAFA. Empress is a citizen of New York and Delaware for purposes of diversity jurisdiction. Accordingly, "minimal

diversity" of citizenship is established because it is more likely than not that members of the putative class are citizens of a state other than New York or Delaware.

26.     However, even if this Court were to consider Empress's citizenship under the traditional test for determining diversity jurisdiction, Empress would still establish minimal diversity. Traditionally, "a limited liability company . . . takes the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Here, Empress is wholly-owned by Paramedics Logistics Operating Company, LLC ("Paramedics Operating Company"), which in turn is wholly-owned by Paramedics Logistics Holding Company, LLC ("Paramedics Holding Company"). Paramedics Holding Company is comprised of seven different members which are either limited liability companies, limited partnerships, or corporations. Therefore, because Empress is 100% owned by its parent, which is 100% owned by Paramedics Holding Company, Paramedics Holding Company's seven members are the members the Court can evaluate to determine the citizenship of Empress. *See id*. Based on an analysis of the available information of these seven members, Empress is a citizen of Delaware, Connecticut, Florida, New York, and Oregon. For example, one of the relevant Paramedics Holding Company's members is CAS Holdings, Inc., which was incorporated in Connecticut and has its headquarters in Connecticut. Another member is Williams Transportation Group, Inc., which is incorporated in Florida, with its headquarters in Florida.

27.     Accordingly, minimal diversity exists under the traditional test applied to the analysis of citizenship of limited liability companies because Empress is, at a minimum, a citizen of Delaware, New York, Connecticut, Florida, and Oregon, and it is more likely than not that members of the putative class are citizens of a state other than Delaware, Connecticut, Florida, New York, and Oregon.

28.    <u>No CAFA Exceptions Apply</u>. There are "[t]hree enumerated exceptions to the exercise of CAFA jurisdiction [that] exists: the 'local controversy' and 'home state controversy' are mandatory exceptions; whereas the 'interests of justice' exception is discretionary." *Brook v. UnitedHealth Group Inc.*, No. 06-cv-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (citing 28 U.S.C. §§ 1332(2)(4)(A)-(B)). Under the "local controversy exception," the court is required to decline to exercise jurisdiction when, among other things, "during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." *Carter v. CIOX Health, LLC*, 260 F. Supp. 3d 277, 282 (W.D.N.Y. 2017) (quoting 28 U.S.C. § 1332(d)(4)(A)). Similarly, under the "interests of justice exception" the court may decline jurisdiction if "during the 3–year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." *Hart v. Rick's NY Cabaret Intern., Inc.*, 967 F. Supp. 2d 955, 968 (S.D.N.Y. 2014) (quoting 28 U.S.C. § 1332(d)(3)). And under the "home state" exception, "[a] district court is to decline jurisdiction [ ] where the primary defendants and at least two-thirds of the class members are citizens of the State in which the action was originally filed." *Brook*, 2007 WL 2827808, at *5.

29.    First, the "local controversy" and "interests of justice" exceptions do not apply because there has been a class action filed within the last three years that asserts the same or similar claims on behalf of the same persons.[1] *See id.* at *4. Specifically, on September 22, 2022, plaintiff

---

[1] In addition, prior the filing of the Finn Class Action and the instant case, three other similar class actions were filed against Empress in the Southern District of New York alleging the same or similar facts and asserting the same or similar claims. *See Egan v. Empress Ambulance Service, LLC*, No. 7:22-cv-08584 (S.D.N.Y., Compl. filed Oct. 7, 2022); *Normand v. Empress Ambulance Services, Inc., d/b/a Empress EMS*, No. 7:22-cv-08590 (S.D.N.Y. Compl. filed Oct. 9, 2022); *Cardwell v. Empress Ambulance Services, LLC d/b/a Empress Emergency Medical Services f/k/a Empress Ambulance Services, Inc.*, No. 7:22-cv-08603 (S.D.N.Y. Compl. filed Oct. 10, 2022).

John Finn, individually and on behalf of all other similarly situated, filed a class action in this Court against Empress Ambulance Services, Inc., d/b/a Empress EMS that alleges Empress failed to properly safeguard patients' sensitive information and that as a result hackers were able to access plaintiff's and putative class members' sensitive information in the Security Incident. *Finn v. Empress Ambulance Service, Inc. d/b/a/ Empress EMS*, No. 7:22-cv-08101 (S.D.N.Y) ("Finn Class Action"), Complaint attached hereto as **Exhibit D**. Based on these allegations, plaintiff Finn asserts claims for breach of fiduciary duty, breach of implied contract, negligence, negligence *per se*, unjust enrichment, and violations of NYGBL § 349. *Id*. There can be no dispute that (1) the Finn Class Action involves the same factual allegations as those at issue in this case; (2) both class actions were brought against the same defendant—Empress; and (3) it was filed within three years before this case. *See Carter*, 260 F. Supp. 3d at 282. There is also no requirement that the purported plaintiff classes be the exact same for these exceptions to apply. *Id*. at 284. Rather, "[t]he inquiry is whether **similar factual allegations** have been made against the defendant in multiple class actions." *Id.* at 284 (quoting S. REP. NO. 109–14 at 41(2005)). The purpose of the "no other class action" requirement "was to prevent the remand to state courts of 'copy cat' class actions, where 'duplicative class actions asserting similar claims on behalf of essentially the same people' were filed and pending in different courts." *Hart*, 967 F. Supp. 2d at 967 (quoting *Brook*, 2017 WL 282808, at *4)).  Accordingly, the "local controversy" mandatory exception and the "interests of justice" discretion exceptions do not apply here, and the Court may exercise jurisdiction under CAFA.

30.     Second, Plaintiff could never demonstrate that CAFA's "home state exception" applies. With over 300,000 putative class members with addresses in all 50 states, there simply is no way to know the citizenship of each putative class member without speaking directly to each

of those 300,000 individuals. *See Hart*, 967 F. Supp. 2d at 964 (stating that the key question is whether the class member "intended to make New York [their] permanent home"). That is especially true here, where many putative class members may just have been visiting New York or may have lived in New York while working "but who lacked the intent to make New York [their] home," when they received their ambulance services from Empress. *See id*. And, as the Court noted in *Hart*, those who "lack[ ] the intent to make New York [their] home [are] not a New York citizen for purposes of 28 U.S.C. § 1332." *Id*.

31.     In sum, none of the CAFA exceptions apply and minimal diversity exists.

### The Amount in Controversy Exceeds the CAFA Threshold[2]

32.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).

33.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

34.     Breach-of-Express-Contract and Breach-of-Implied-Contract Claims. Plaintiff alleges that "Plaintiff and Class members entered into written agreements regarding their medical

---

[2] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Empress denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

care and other services that Empress was to provide to Plaintiff and Class members." Exhibit A at ¶ 69. Plaintiff further alleges that "Empress breached its obligations under the contracts . . . by failing to implement and maintain reasonable security measures to protect and secure their PII/PHI." *Id.* at ¶ 71.

35.     Plaintiff also alleges that "Plaintiff and all other Class members entered into implied contracts with Empress," and, in exchange for money, "Empress agreed to, among other things, . . . take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI." Exhibit A at ¶¶ 75-76. Plaintiff further alleges that "Empress breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII/PHI." *Id.* at ¶ 79.

36.     As a result of the alleged breaches of express and implied contracts, Plaintiff claims that he and the Class members were damaged because: (i) "they paid—directly or through their insurers—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (vi) [they] lost time and money incurred to mitigate and remediate the effects of the [Security Incident], including the increased risks of medical identity theft they face and will continue to face; and (vii) [they were injured via] overpayment for the services that were received without adequate data security." *Id.* at ¶¶ 73, 81.

37.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which he or any member of the Class are allegedly entitled for

Empress's alleged breach of express and implied contracts. However, because Plaintiff seeks damages based on an "increased risk of identity theft and medical theft—risks [they claim] justify[] expenditures for protective and remedial services for which they are entitled to compensation," and because their PII/PHI was allegedly exposed, one option for assigning a value to these damages is through the cost of credit monitoring. *Id*. The cost of credit monitoring is the "out-of-pocket expenses" associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or authorized use of their PII and PHI that Plaintiff alleges he and the Class are at risk of in the future.

38.    Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. For example, LifeLock offers a product, titled Norton360 with LifeLock, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month.[3] Similarly, both Equifax[4] and Experian[5] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 per month. Multiplying just the cost of providing two months of credit-monitoring services at $8.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $5,727,672.84 (calculated as: 318,558 individuals notified, times 2 months, times $8.99 per month).

39.    <u>Negligence and Negligence *Per Se* Claims</u>. Plaintiff alleges that "Empress owed a

---

[3] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited: October 18, 2022).

[4] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355 (last visited: October 18, 2022).

[5] *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606 (last visited: October 18, 2022).

duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII/PHI in its possession, custody, and control," and "Empress breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit data security processes, controls, policies, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it." *Id.* at ¶¶ 48, 51.

40.    Plaintiff alleges that as a result of Empress's "wrongful actions, inaction, and want of ordinary care that directly and proximately caused the [Security Incident], Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the [Security Incident]; (v) the continued risk to their PII/PHI which remains in Empress' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the [Security Incident]; and (vii) overpayment for the services that were received without adequate data security." *Id.* at ¶ 54.

41.    Plaintiff further alleges that Empress violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1302d *et seq.*, by, among other things, "failing to use reasonable measures to protect Plaintiff's and other Class members' PII/PHI and not complying with applicable industry standards," which constitutes negligence *per se*. Exhibit A at ¶¶ 56-59.

42.     Plaintiff alleges that as a direct and proximate result of Empress's alleged negligence *per se*, "Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the [Security Incident]; (v) the continued risk to their PII/PHI which remains in Empress' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the [Security Incident]; and (vii) overpayment for the services that were received without adequate data security." *Id.* at ¶ 63.

43.     The Complaint contains no allegations that would support or suggest the amount in actual damages to which he or any member of the Class are allegedly entitled for Empress's alleged negligence and negligence *per se*. But, as stated above, just two months of Norton360 with LifeLock for each member of the Class would amount to, at a minimum, $5,727,672.84. Plaintiff's other allegations do not support or suggest the amount in other economic and noneconomic damages, especially given that Plaintiff does not allege that either he or any member of the Class has suffered fraud, attempted fraud, or any specific out-of-pocket expenses as a result of the Security Incident. Therefore, Empress does not include in the calculation of the total amount in controversy Plaintiff's alleged damages arising from Empress's alleged negligent acts or omissions. However, when these alleged damages are combined with the cost of just two months of credit monitoring for the entire Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

44.     <u>Breach-of-Fiduciary Duty Claim</u>. Plaintiff alleges that (1) they "gave Empress their

PII/PHI in confidence," (2) "Empress' acceptance and storage of Plaintiff's and Class members' PII/PHI created a fiduciary relationship between them," and (3) Empress "breached that duty by," among other things, "failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII/PHI." *Id*. at ¶¶ 65-66.

45.     Plaintiff alleges that "[a]s a direct and proximate result of Empress' breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the [Security Incident]; (v) the continued risk to their PII/PHI which remains in Empress' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the [Security Incident]; and (vii) overpayment for the services that were received without adequate data security." *Id*. at ¶ 67.

46.     Plaintiff's Complaint, however, contains no allegations that would support or suggest the amount in actual damages he or any member of the Class allegedly sustained as a result of Empress's alleged breach of fiduciary duty. Therefore, Empress does not include in the calculation of the total amount in controversy Plaintiff's or the Class's alleged breach-of-fiduciary-duty damages. However, when Plaintiff's and the Class's alleged breach-of-fiduciary-duty damages are combined with the cost of just two months of Norton360 with LifeLock credit monitoring for each member of the Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

47.     <u>Unjust-Enrichment Claim</u>. In the alternative to the breach of express and breach of

implied contract claims, Plaintiff alleges that "Plaintiff and Class members conferred a monetary benefit upon Empress in the form of monies paid for services," "Empress accepted . . . the benefits conferred upon it," and "[a]s a result of Empress' conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received." *Id*. at ¶¶ 83-86.

48.    Plaintiff's Complaint, however, contains no allegations that would support or suggest the "value" or amount of "reasonable data privacy security practices and procedures" that they allegedly paid for versus what they allegedly received.  Therefore, Empress does not include in the calculation of the total amount in controversy Plaintiff's or the Class's alleged unjust-enrichment damages. However, when Plaintiff's and the Class's alleged unjust-enrichment damages are combined with the cost of just two months of Norton360 with LifeLock credit monitoring for each member of the Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

49.    <u>NYGBL Claim</u>. Plaintiff alleges that "Empress' failure to make Plaintiff and Class members aware that it would not adequately safeguard their information while maintaining that it would is a 'deceptive act or practice' under [NYGBL] § 349." *Id*. at ¶ 94.

50.    Plaintiff further alleges that as a result of Empress's alleged violations of NYGBL § 349,  "Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with

effort attempting to mitigate the actual and future consequences of the [Security Incident]; (v) the continued risk to their PII/PHI which remains in Empress' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the [Security Incident]; and (vii) overpayment for the services that were received without adequate data security." *Id*. at ¶ 97. Plaintiff seeks statutory damages on behalf of himself and the putative class in the amount of the greater of actual damages or $50 for each violation. *Id*. at ¶ 98.

51.     Under the NYGBL § 349(h), "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

52.     Plaintiff's Complaint contains no allegations that would support or suggest the amount of "greater or actual damages" that Plaintiff and the putative class are entitled for Empress's alleged violations of NYGBL § 349. Thus, assuming the statutory damages amount of $50 per putative class member was valid and awarded, the amount in controversy would increase by $15,927,900 (calculated as: 318,558 individuals notified, times $50).

53.     <u>Total Amount in Controversy</u>. Based on the discussion above, the amount in controversy based just on two months of Norton360 with LifeLock credit monitoring and the statutory damages under NYGBL § 349 for each member of the putative class, exceeds the $5,000,000 CAFA minimum before ever taking into account other forms of compensatory

damages, injunctive relief, or attorneys' fees, which, as discussed below, adds even more to the total amount in controversy.

54.    <u>Other Claims</u>. In addition to the damages discussed above, Plaintiff also requests injunctive relief for himself and the Class. Exhibit A, Prayer for Relief. In certain circumstances, where the value of injunctive relief is ascertainable, the value can be considered when determining the amount in controversy. *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) ("In actions seeking [ ] injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Parker v. Riggio*, No. 10 Civ. 9504, 2012 WL 3240837, at *7 (S.D.N.Y. Aug. 6, 2012) (internal quotation marks and citation omitted) (The prevailing calculation method is the "plaintiff's viewpoint" approach, where the Court calculates the value to the plaintiff not the cost to the defendant.). Here, however, no allegations in the Complaint allow Empress to calculate the amount of Plaintiff's injunctive relief demand, and therefore, Empress has not included that value in the calculation of the total amount in controversy. Nevertheless, Empress underscores the allegations to the Court as further evidence that the amount in controversy exceeds the $5,000,000, as already established above.

## NOTICE

55.    Defendant is providing written notice of the removal of this case on Plaintiff's counsel, and a notice of filing this Notice of Removal will be promptly filed with the Clerk of the Supreme Court of New York, County of Westchester in accordance with 28 U.S.C. §1446(d).

## CONCLUSION

WHEREFORE, Defendant removes the State Court Action from the Supreme Court of the State of New York, County of Westchester to the United States District Court for the Southern District of New York.

Dated: October 31, 2022                          Respectfully Submitted,
New York, New York


                                        _/s/ Robyn Feldstein_____
                                        Robyn Feldstein
                                        **BAKER & HOSTETLER LLP**
                                        45 Rockefeller Plaza
                                        New York, New York  10111-0100
                                        Tel: 212-589-4278
                                        Fax: 212-589-4201
                                        E-Mail: rfeldstein@bakerlaw.com
                                        _Attorney for Defendant_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SALVATORE J. CONTRISTANO, individually and
on behalf of all others similarly situated,

                Plaintiff,

vs.

EMPRESS AMBULANCE SERVICE, LLC,

                Defendant.

---

Case No.

**CERTIFICATE OF**
**SERVICE**

       I hereby certify that on October 31, 2022, I electronically filed a Notice of Removal of this action that was originally filed in the Supreme Court of New York, County of Westchester in this Court. Also, on October 31, 2022, I filed formal notice of the removal (including a copy of the Notice of Removal Papers filed in this Court) with the Supreme Court of New York, County of Westchester, using the NYSCEF electronic filing system, which sent notice of such filing to Plaintiff's counsel. On the same date, I also served a copy of the removal papers, the Rule 7.1 Disclosure Statement, Civil Cover Sheet, Electronic Case Filing Rules & Instructions and the Individual Practices of the assigned Judge via first class mail to Plaintiff's counsel below:

       Jeremiah Frei-Pearson
       Todd S. Garber
       Andrew C. White
       FINKELSTEIN, BLANKINSHIP,
       FREI-PEARSON & GARBER, LLP
       One North Broadway, Suite 900
       White Plains, NY 10601
       Tel: 914-298-3284
       Fax: 914-908-6722
       jfrei-pearson@fbfglaw.com
       tgarber@fbfglaw.com
       awhite@fbfglaw.com

Anthony L. Parkhill
Riley W. Prince
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
aparkhill@barnowlaw.com
rprince@barnowlaw.com

Seth A. Meyer
Alex J. Dravillas
KELLER POSTMAN LLC
150 N. Riverside, Suite 4100
Chicago, Illinois 60606
Tel: (312) 741-5220
sam@kellerlenkner.com
ajd@kellerlenkner.com

                                          */s/ Robyn Feldstein*
                                          Robyn Feldstein